IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

C.P.,[1]

        Plaintiff,

v.                                         Case No. 19-1256-JWB

ANDREW M. SAUL,
*Commissioner of Social Security*,

        Defendant.

## MEMORANDUM AND ORDER

    Plaintiff filed this action for review of a final decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff's application for disability insurance benefits and supplemental security income.  Plaintiff and the Commissioner have each filed a brief.  (Docs. 11, 13.)  No reply brief was filed and the time for filing one has now expired.  The matter is accordingly ripe for decision.  For the reasons stated herein, the Commissioner's decision is REVERSED and REMANDED.

## I.  Standard of Review

    The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  The Commissioner's decision will be reviewed to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. *Glenn v. Shalala*, 21 F.3d 983, 984 (10th Cir. 1994).  Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such evidence as a

---

[1] Plaintiff's initials are used to protect privacy interests.

reasonable mind might accept as adequate to support the conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted. Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. *Graham v. Sullivan*, 794 F. Supp. 1045, 1047 (D. Kan. 1992). The court should examine the record as a whole, including whatever fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met. *Glenn*, 21 F.3d at 984.

The Commissioner has established a five-step sequential evaluation process to determine disability. 20 C.F.R. § 404.1520; *Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010). If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further. At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity." *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988). At step two, the agency will find non-disability unless the claimant shows that he or she has a severe impairment. At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled. *Id*. at 750-51. If the claimant's impairment does not meet or equal a listed impairment, the agency determines the claimant's residual functional capacity ("RFC"). 20 C.F.R. § 404.1520(e). The RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. § 404.1520(a)(4); § 404.1520(f), (g). At step four, the agency must determine whether the claimant can perform previous work. If a claimant shows that she cannot perform the previous work, the fifth and final step requires the agency to consider vocational factors (the

claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. *Barnhart v. Thomas*, 540 U.S. 20, 25 (2003).

The claimant bears the burden of proof through step four of the analysis. *Blea v. Barnhart*, 466 F.3d 903, 907 (10th Cir. 2006).  At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. *Id.*; *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).  The Commissioner meets this burden if the decision is supported by substantial evidence. *Thompson*, 987 F.2d at 1487.

## II.  Background and Procedural History

Plaintiff alleges he became disabled as of July 12, 2016, when he was 42 years old.  (Tr. at 210.)  His prior work history included positions in customer service and as the departmental manager of a pet store, assistant manager of a pizza store, a security guard, and customer service in a wine store and in a gas station.  (*Id.* at 280.)  Plaintiff protectively filed claims for disability insurance benefits and supplemental security income on July 12, 2016.  The claims were denied initially by the Commissioner on December 7, 2016, and upon reconsideration on April 12, 2017.  (*Id.* at 10.)  Plaintiff then requested an evidentiary hearing before an Administrative Law Judge (ALJ).  An evidentiary hearing was held on July 10, 2018, before ALJ Michael D. Mance in Topeka, Kansas.  (*Id.*)  Plaintiff testified at the hearing, as did vocational expert Jennifer Smidt. (*Id.*)  The ALJ issued a written decision on October 30, 2018, denying Plaintiff's applications for benefits.  (*Id.* at 21.)

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since July 12, 2016, the alleged onset date.  (Tr. at 12.)  At step two, the ALJ found Plaintiff had the following severe impairments: obesity, insulin-dependent diabetes mellitus, history of a left

shoulder labrum tear, and depression.  (*Id.*)  The ALJ found Plaintiff had medically determinable impairments of hypertension and gastroesophageal reflux, but they were non-severe.  (*Id.* at 13.) Plaintiff also alleged carpel tunnel syndrome, cataracts, and myocardial infarctions, but the ALJ found these were not medically determinable impairments.  (*Id.*)  At step three, the ALJ found Plaintiff does not have an impairment that meets or medically equals one of the impairments listed in the regulations.  (*Id.* at 13-14.)  The ALJ considered the criteria for Listings 12.04 (depressive, bipolar, and related disorders) and 12.06 (anxiety and obsessive-compulsive disorders),but found Plaintiff's impairments did not meet or exceed the requirements, including the "paragraph B" requirement of having at least one extreme limitation or two marked limitations out of four specified areas of mental functioning.[2]  (Tr. at 14-15.)

The ALJ next determined Plaintiff has the RFC to perform light work as defined in the regulations with the following exceptions: he can only occasionally climb stairs and ramps; can never climb ladders, ropes, or scaffolds; he can occasionally balance, stoop, kneel, crouch, or crawl; he is limited to occasional reaching overhead with the left upper extremity; he should work in a temperature-controlled environment; he should avoid concentrated exposure to unprotected heights, excessive vibrations, and hazardous machinery; and he is limited to performing routine, repetitive, and unskilled work that requires no more than occasional contact with the public and co-workers. (*Id.* at 16.)

At step four, the ALJ found Plaintiff was unable to perform any of his past relevant work. (*Id.* at 19.)  At step five, after taking into account Plaintiff's age, education, work experience and

---

[2] The phrase "paragraph B" refers to the functional criteria used to assess mental disorders in paragraph B of each listing for mental disorders set forth under Listing 12.00 of Title 20 of the Code of Federal Regulations, Part 404, Subpart B, Appendix 1.  *See* 20 C.F.R. Pt. 404, Subpt P, App. 1, Listing 12.00A(2)(b).  Claimant's degree of impairment in the "paragraph B" broad functional areas is assessed at step three of the sequential evaluation process to determine whether the claimant's mental impairment is severe and satisfies an adult mental disorder listing. *Beasley v. Colvin*, 520 F. App'x 748, 754 (10th Cir. 2013); *see also* 20 C.F.R. § 404.1520a(d)(1)-(2).

RFC, the ALJ determined there were jobs in significant numbers in the national economy that Plaintiff could perform.  Relying on the testimony of the vocational expert, the ALJ found Plaintiff would be able to perform occupations such as: clerical router (DOT 222.587-038; light, unskilled work, SVP 2; 50,000 jobs nationally); marker (DOT 209.587-034; light, unskilled work, SVP 2; 270,000 jobs nationally); and photo copy machine operator (DOT 207.685-014; light, unskilled work, SVP 2; 31,000 jobs nationally).[3]  (Tr. at 20.)  The ALJ thus concluded Plaintiff was not under a disability within the meaning of the Social Security Act.

## III.  Analysis

Plaintiff first argues the ALJ erred by failing to properly consider the opinions of Dr. Schulman and Dr. Duclos.  (Doc. 11 at 6.)  He contends the ALJ "failed to address a material inconsistency between the two opinions and ultimately crafted an RFC … less limiting than the State agency consultants opined."  (*Id.* at 7.)  Specifically, Plaintiff complains the ALJ failed to account for Dr. Duclos's opinion that Plaintiff was limited to one-to-two-step instructions. Plaintiff believes the ALJ "seemingly discarded" Dr. Duclos's opinion by concluding that both opinions were "consistent with the objective evidence" and then determining that Plaintiff's RFC merely limited him to "routine, repetitive, and unskilled work."  (*Id.* at 9-10.)

Dr. Schulman's opinion included an assessment that Plaintiff was moderately limited in his ability to understand and remember detailed instructions.  (Tr. at 66.)  Dr. Schulman opined that Plaintiff "can understand, remember, use judgment, and make decisions for [three-to-four] step instructions."  (*Id.*)  He also found Plaintiff had sustained concentration and persistence

---

[3] Specific Vocational Preparation (SVP) is defined as the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker          situation.          DOT,          App'x          C,          II,          available          online          at: https://www.dol.gov/agencies/oalj/PUBLIC/DOT/REFERENCES/DOTAPPC (last visited Nov. 3, 2020). Unskilled work corresponds to an SVP of 1 or 2.  *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (citing SSR 00–4p, 2000 WL 1898704, at *3).

limitations, indicating he was moderately limited in carrying out detailed instructions.  (*Id.*)  He found certain other moderate limitations as well, although they are not relevant here.  Dr. Duclos also opined that Plaintiff had certain moderate limitations, including a moderate limitation on the ability to carry out detailed instructions, and further that his limitations in sustained concentration and persistence meant he "can sustain concentration for [one-to-two] step instructions."  (Tr. at 94.)

The ALJ's treatment of the opinions of Dr. Schulman and Dr. Duclos is unclear.  The ALJ specifically pointed out a seeming conflict between the two, noting that "while Dr. Schulman limited the claimant to three to four step instructions, Dr. Duclos limited the claimant to one to two step instructions."  (Tr. at 18.)  The ALJ then found the opinions "are both consistent with the objective evidence of record."  (*Id.*)  The ALJ went on to state he had "given both these opinions great weight."  (*Id.*)  The ALJ said nothing further about any limitation specifically relating to Plaintiff's ability to remember, understand, or carry out instructions and included no such limitation in his hypothetical questions to the vocational expert or in his discussion or determination of the RFC.

This treatment leaves it unclear whether or how the ALJ resolved the apparent difference in medical opinions.  The court can only speculate whether a specific limitation on the ability to remember or carry out instructions was intended to be encompassed in the RFC or was purposely excluded.  It is possible that the ALJ intended "routine, repetitive, and unskilled work" to encompass a limitation to work involving no more than one-to-two-step instructions, although there is nothing in the record to show that was the case.  Moreover, the ALJ did not inform the vocational expert that Plaintiff had any such limitation and nothing in the vocational expert's testimony touched upon the subject.  If, on the other hand, the ALJ purposely excluded these

limitations, the opinion does not explain why they were excluded after the ALJ found they were supported by the evidence and stated that he gave them great weight.

This uncertainty is reflected in the Commissioner's varying arguments for affirmance of the decision. The Commissioner first asserts that "even assuming a finding of three to four step instructions is materially inconsistent with unskilled work, the ALJ did not find Plaintiff capable of performing such tasks, and an ALJ does not commit reversible error by tempering the extremes of a medical opinion for the claimant's benefit." (Doc. 14 at 13.) But the ALJ did not "temper the extremes" by adopting a more favorable limitation over a less favorable one; he failed to adopt either limitation. The Commissioner next argues that because the RFC determined by the ALJ is supported by substantial evidence, the ALJ's failure to include any additional limitations was not error. (*Id.* at 14.) But that fails to address why the doctors' specific limitations on the ability to follow instructions were not included in the RFC when they were – according to the ALJ – supported by objective evidence and given great weight. As Plaintiff argues, "[i]f the ALJ intended to discount the limitation to one-to two-step instructions and tasks and instead craft an RFC more consistent with Dr. Schulman's assessment, the ALJ should have explained why he chose to do so." (Doc. 11 at 11.) The ALJ had an obligation to explain how the medical opinions were treated and how the RFC was determined. *See Gaye Raynae A. v. Saul*, No. CV 20-2021-JWL, 2020 WL 6059731, at *3 (D. Kan. Oct. 14, 2020) (holding Social Security Ruling (SSR) 96-8p requires an ALJ to explain how the evidence supports each RFC conclusion and how any material inconsistencies or ambiguities in the evidence were considered and resolved). The Commissioner next argues that the RFC limitation to unskilled work impliedly encompassed a limitation to understanding and remembering one-to-two-step instructions. (*Id.*) Aside from the fact that the ALJ made no such finding, this argument appears to run afoul of Tenth Circuit cases, as discussed

below.  *See Groberg v. Astrue*, 505 F. App'x 763, 770 (10th Cir. 2012) ("This argument … supplies a new factual and/or legal predicate not present in the ALJ's reasoning."); *Chapo v. Astrue*, 682 F.3d 1285, 1290 n. 3 (10th Cir. 2012) (a limitation to "unskilled jobs" is generally insufficient to address a claimant's mental impairments).

The Tenth Circuit has said an RFC limitation to unskilled work can sometimes serve as "shorthand" for the specific mental abilities needed to successfully carry out such work. *Jaramillo v. Colvin*, 576 F. App'x 870, 875 (10th Cir. 2014).  But *Jaramillo* found such shorthand was insufficient to address several moderate limitations on which an ALJ placed great weight.  In that case, a doctor said the claimant had moderate limitations on the ability to carry out instructions, attend and concentrate, and work without supervision.  *Id.* at 876.  The Tenth Circuit noted that a moderate limitation (unlike a mild one) means the individual's ability to perform the activity is impaired, and found that "[n]one of the basic mental abilities of unskilled work described in SSR 85–15 captures any of the three *moderate* limitations" found by the doctor and given weight by the ALJ.  *Id.* (emphasis in original).  *Jaramillo* thus found the "limitation to simple, routine, repetitive, and unskilled tasks the ALJ included in his hypothetical to the VE did not clearly relate the moderate impairments [the doctor] found," and was contrary to regulations requiring the ALJ to "express those impairments 'in terms of work-related functions' or '[w]ork-related mental activities'…."  *Id.* (citing SSR 96–8p, 1996 WL 374184, at *6).  "As a result, the ALJ's reliance on the jobs the VE identified in response to the hypothetical was not supported by substantial evidence."  *Id.* (citation omitted.)

By contrast, in *Vigil v. Colvin*, the Tenth Circuit found an ALJ "accounted for [claimant's] moderate concentration, persistence, and pace problems in his RFC assessment by limiting him to unskilled work," at least where the RFC also limited the claimant to jobs with an SVP of only one

or two.  805 F.3d 1199, 1204 (10th Cir. 2015) ("There may be cases in which an ALJ's limitation to 'unskilled' work does not adequately address a claimant's mental limitations[,] … [b]ut in this case, we conclude that limiting the plaintiff to an SVP of only one or two, adequately took into account his moderate limitations in concentration, persistence, and pace.")  In *Smith v. Colvin,* the Tenth Circuit found an ALJ adequately accounted for a claimant's mental limitations by adopting an RFC that said the claimant "could engage in only simple, repetitive, and routine tasks." 821 F.3d 1264, 1269 (10th Cir. 2014).  *Smith* found the RFC adequately reflected a doctor's conclusion that the claimant could "engage in work that was limited in complexity."  *Id.* at 1268.  More recently, the Tenth Circuit noted that while "an ALJ may find and explain how restricting a claimant to unskilled work accounts for their moderate mental limitations" in formulating an RFC, "for purposes of articulating an accurate hypothetical question to a VE, we have held that an ALJ's restriction to simple or unskilled work generally does not capture the claimant's functionally distinct mental limitations."  *See Carr v. Comm'r, SSA*, 734 F. App'x 606, 611 (10th Cir. 2018).

Plaintiff argues the ALJ's lack of findings or explanation concerning a limitation to one-to-two-step instructions was prejudicial error.  He notes that all of the jobs identified by the vocational expert and the ALJ were categorized in the DOT as requiring level two reasoning, and he argues a limitation for one-to-two-step instructions falls within the DOT's definition of level one reasoning.  Plaintiff argues the ALJ should have asked the vocational expert about this apparent conflict and about the impact of such a limitation on the jobs Plaintiff could perform.  (Doc. 11 at 12.)  In response, the Commissioner acknowledges that when there is an apparent unresolved conflict between vocational expert testimony and the DOT, the ALJ must elicit a reasonable explanation for the conflict before relying on the testimony.  (Doc. 14 at 19 (citing SSR 00-4p, 2000WL 1898704, *2)).  But the Commissioner argues there is no conflict here

because DOT reasoning level refers to the educational background that makes a person suitable for a job, not to the mental or physical abilities needed to perform a job. (*Id*.) The Commissioner acknowledges there are conflicting decisions on that point, but also contends the issue is controlled by *Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005), because *Hackett* found level two reasoning was consistent with a mental RFC for simple tasks. (Doc. 14 at 21.)

By definition, unskilled work requires "[u]nderstanding, remembering, and carrying out *simple instructions*." See SSR 96–9p, 1996 WL 374185, at *9 (July 2, 1996) (emphasis added). *See also* 20 C.F.R. § 404.1568(a) ("Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time.") It might be assumed from this that a limitation to unskilled work effectively encompasses a limitation to one-to-two-step instructions, because one-to-two-step instructions are certainly simple, but three-step instructions have likewise been labeled as simple and included in RFCs for unskilled work. *See e.g., Welch v. Colvin*, 566 F. App'x 691, 693 (10th Cir. 2014) (claimant "limited to simple and unskilled work with one-, two-, or three-step instructions.") Aside from that, the DOT classifies jobs according to their GED – general educational development – which "embraces those aspects of education (formal and informal) which are required of the worker for satisfactory job performance." *See Dictionary of Occupational Titles,* App. C, 1991 WL 688702. The GED in turn contains three components, one of which is the reasoning development associated with the job, which the DOT ranks on a six-level scale. Level three provides as follows: "Apply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete variables in or from standardized situations." *Id.* Level two provides: "Apply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from

standardized situations." *Id.*  And level one provides: "Apply commonsense understanding to carry out *simple one- or two-step instructions*. Deal with standardized situations with occasional or no variables in or from these situations encountered on the job."  *Id.* (emphasis added.)  One-to-two-step instructions are thus specifically within the purview of level one reasoning under the DOT.

In *Hackett,* the Tenth Circuit reviewed an RFC limitation to "simple and routine work tasks" and observed that it "seems inconsistent with the demands of level-three reasoning," adding that level two reasoning "appears more consistent with Plaintiff's RFC."  *Id.*, 395 F.3d at 1176. The court concluded it "must therefore reverse this portion of the ALJ's decision and remand to allow the ALJ to address the apparent conflict between Plaintiff's inability to perform more than simple and repetitive tasks and the level-three reasoning required by the jobs identified as appropriate for her by the VE."  *Id.*  *Hackett* cited *Lucy v. Chater*, 113 F.3d 905, 909 (8th Cir. 1997), in which the Eighth Circuit indicated that an RFC for following "simple instructions" conflicted with level two reasoning requiring an ability to follow "detailed" instructions.  *Lucy,* 113 F.3d at 909.  *Hackett* clearly treated DOT reasoning development levels as something more than educational background.  It treated them – at least in the absence of evidence to the contrary – as corresponding to the "reasoning required by the jobs," and required an explanation from the ALJ when they appeared to conflict with an RFC.  *Hackett,* 395 F.3d at 1176.

There is a difference of opinion within this district regarding potential conflicts between DOT reasoning levels and mental limitations in an RFC.  Judge Crow has remanded cases based on an apparent conflict between reasoning level two jobs and RFC limitations for carrying out simple instructions.  *See MacDonald v. Berryhill*, No. 16-2594-SAC, 2018 WL 806221, at *4 (D. Kan. Feb. 9, 2018) ("On its face, the language for a reasoning level of 2 … reasonably appears to

conflict with a person being limited to understanding, remembering and carrying out simple work instructions.  Because of this conflict, the ALJ erred by failing to inquire about and resolve this conflict.").  *See also Johnson v. Berryhill*, No. 16-4185-SAC, 2017 WL 6508944, at *9 (D. Kan. Dec. 20, 2017) (citing several prior cases remanding to resolve apparent conflicts).  Judge Lungstrum, on the other hand, has declined in several cases to find a conflict between reasoning level two jobs and an RFC limiting a claimant to carrying out simple instructions, based on his view that DOT reasoning levels deal with educational background rather than job skills.  *See e.g., Karen Jean M. v. Saul*, No. CV 19-2455-JWL, 2020 WL 5057488, at *14 (D. Kan. Aug. 27, 2020); *Kyle Edward Victor G. v. Saul*, No. CV 19-2518-JWL, 2020 WL 3960422, at *11 (D. Kan. July 13, 2020).  Judge Melgren recently addressed this issue and, like Judge Crow, determined that a remand was required where the ALJ did not resolve an apparent conflict between reasoning level two jobs cited by a vocational expert and the plaintiff's RFC limiting her to carrying out simple instructions.  *Alissia M. v. Saul*, No. 19-2105-EFM, 2020 WL 1847745, at *1 (D. Kan. Apr. 13, 2020).

As noted previously, the Commissioner argues the jobs the ALJ found Plaintiff can perform "accounted for Plaintiff's asserted limitation to one-to-two-step instructions."  (Doc. 14 at 15.) But the court agrees with *MacDonald* and *Alissa M.* that the apparent conflict between any such limitation and DOT reasoning level two jobs requires a remand for the ALJ to address and resolve the conflict.   The plain language of the DOT suggests that a limitation to one-to-two-step instructions conflicts with the requirements for jobs requiring level two reasoning.  Cases such as *Karen Jean M.* concede as much.  *Karen Jean M.*, 2020 WL 5057488, at *14 (acknowledging "it might be reasonable for a layman, an attorney, or a court to conclude from the plain language of the DOT definition" that a conflict exists).  The ALJ was not entitled to rely on the vocational

expert testimony that Plaintiff can perform such jobs without addressing this apparent conflict. *Haddock v. Apfel*, 196 F.3d 1084, 1091 (10th Cir. 1999) ("the ALJ must investigate and elicit a reasonable explanation for any conflict between the Dictionary and expert testimony before the ALJ may rely on the expert's testimony as substantial evidence to support a determination of nondisability.")  In *Hackett*, the Tenth Circuit found that such an apparent conflict with a DOT reasoning level requires a remand.  *Hackett,* 395 F.3d at 1176.  Applying *Hackett,* the court must reach the same conclusion here.

   *Karen Jean M*. distinguished *Hackett* on the grounds that it involved a level three reasoning job rather than a level two job.  *Karen Jean M.*, 2020 WL 5057488, at *13.  But that fact was not material to *Hackett's* unmistakable conclusion that a facial conflict between a DOT reasoning level and limitations in an RFC must be addressed by the ALJ.   *Karen Jean M*. also asserted that no conflict exists in such circumstances because DOT reasoning levels are merely educational levels, not job skills.  *Id.* at *14.  That view – though not unreasonable[4] – is not consistent with the reasoning of *Hackett.*  Had the Tenth Circuit been of that view in *Hackett*, it would not have found an apparent conflict and remanded the case.  *Garcia v. Barnhart*, 188 F. App'x 760, 767 (10th Cir. 2006) ("in *Hackett* we found a facial conflict between a claimant's 'inability to perform more than simple and repetitive tasks' and the 'level-three reasoning' required in the DOT for jobs identified by the VE, and, consequently, reversed and remanded for an explanation.")  As noted previously, *Hackett* treated DOT reasoning levels as describing requirements for job performance.  Finally, the court must reject the Commissioner's argument that *Hackett* held that level two reasoning jobs are consistent with an RFC for simple, routine tasks.  As Judge Melgren pointed out, *Hackett's*

---

[4] *Cf. Dictionary of Occupational Titles,* App. C, 1991 WL 688702 (reasoning development is one component of GED, which "embraces those aspects of education (formal and informal) which are required of the worker for satisfactory job performance.")

comment about level two reasoning jobs was dicta, as "the issue of whether a GED reasoning level of two conflicts with simple work was not before the Court in *Hackett*," and the Tenth Circuit has since indicated it has not resolved the issue.  *Alissia M.,* 2020 WL 1847745, at *11; *Paulek v. Colvin*, 662 F. App'x 588, 594 (10th Cir. 2016) (remanding to address conflict; citing *Hackett* and *Lucy* while noting "we have not spoken to whether a limitation to simple and routine work tasks is analogous to a limitation to carrying out simple instructions, [but] the Eighth Circuit has held that a limitation to simple instructions is inconsistent with both level-two and level-three reasoning.")

### IV.  Conclusion

The decision of the Commissioner is REVERSED and REMANDED.  The case is remanded pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further proceedings in accordance with this Memorandum and Order.  The clerk is directed to enter judgment in accordance with this order.

　　　　　　　　　　　_____ s/ John W. Broomes_____
　　　　　　　　　　　JOHN W. BROOMES
　　　　　　　　　　　UNITED STATES DISTRICT JUDGE